UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Scott LeDoux

         v.                         Civil No. 12-cv-260-JL
                                    Opinion No. 2012 DNH 194
JP Morgan Chase, N.A.,
Federal Home Loan Mortgage
Corporation, and Haughey,
Philpot & Laurent, P.A.


**MEMORANDUM ORDER**

Plaintiff Scott LeDoux, proceeding pro se, has brought a
five-count[1] complaint against JP Morgan Chase, N.A. ("Chase"),
the servicer of his mortgage loan; the Federal Home Loan Mortgage
Corporation (more commonly known as "Freddie Mac"), the putative
mortgagee; and Haughey, Philpot & Laurent, P.A., foreclosure
counsel for Chase and Freddie Mac.  LeDoux alleges that these
three defendants have pursued foreclosure against him even though
Freddie Mac does not hold the promissory note for his loan.  He
further alleges that all three defendants violated the New
Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. §
358-A, and the federal Fair Debt Collection Practices Act
("FDCPA"), 15 U.S.C. § 1601 et seq., and that Chase both violated
the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §
2601 et seq., and committed fraud.  Chase and Freddie Mac (herein

_____

[1]LeDoux's second amended complaint contains two "Complaints"
and three separately-numbered "Counts."  The court construes each
of these as purporting to state a distinct cause of action.

referred to collectively as "defendants," a term that, for present purposes, is not intended to encompass Haughey, Philpot & Laurent) have moved to dismiss, arguing that LeDoux's second amended complaint fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), by virtue of LeDoux's claims under various federal statutes, and 12 U.S.C. § 1452(f), which provides this court with jurisdiction over "all civil actions to which [Freddie Mac] is a party."  After hearing oral argument, the court grants the motion in part and denies it in part.  As explained in more detail below, LeDoux has stated plausible claims for relief under the CPA, FDCPA, and RESPA.  Defendants' motion is therefore denied as to those claims.

LeDoux's claim for injunctive relief against foreclosure must, however, be dismissed.  LeDoux's challenge to defendants' ability to foreclose relies primarily on an apparent error in an indorsement of the promissory note, but LeDoux may not challenge this error under New Hampshire law.  Furthermore, because LeDoux has not pled "specific facts that make it reasonable to believe" that Chase "knew that [its allegedly fraudulent statement] was materially false or misleading," N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009), his claim for fraud is dismissed.

## I.   Applicable legal standard

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff's complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In ruling on such a motion, the court must accept as true all well-pleaded facts set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court "may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).  With the facts so construed, "questions of law [are] ripe for resolution at the pleadings stage." Simmons v. Galvin, 575 F.3d 24, 30 (1st Cir. 2009).  The following background summary adopts that approach.

## II.   Background

### A.   Origination and ownership of LeDoux's loan

On September 2, 2003, plaintiff Scott LeDoux executed a promissory note in the amount of $275,500 in favor of Regency Mortgage Corporation.  The note was secured by a mortgage on LeDoux's property in New Ipswich, New Hampshire, also executed in

Regency's favor.  That same day, Regency assigned the mortgage to Mortgage Electronic Registration Systems ("MERS"), "as nominee for Crescent Mortgage Services, Inc."  The following day, the assignment was recorded in the Hillsborough County Registry of Deeds.[2]  MERS, in turn, assigned the mortgage to Freddie Mac on July 30, 2010; shortly thereafter, that assignment was recorded in the Hillsborough County Registry of Deeds.[3]

On their face, both assignments purported to transfer ownership of the note as well as the mortgage.  A separate, undated note allonge, however, indorses the note to the order of Crescent Mortgage Services, Inc. (though it incorrectly identifies the date of the note as September 2, 2002, rather than September 2, 2003).  On the face of the note itself, Crescent Mortgage Services, Inc. has indorsed the note in blank.  LeDoux disputes that Freddie Mac currently holds the note, though he offers no suggestion as to who the actual holder might be.

_____

[2]The assignment was recorded at Book 7054, Page 1470.  As the recorded assignment is a matter of public record, this court may take note of it without converting defendants' Rule 12 motion into a Rule 56 motion for summary judgment.  See Greene v. Rhode Island, 398 F.3d 45, 48-49 (1st Cir. 2005).  And, as just mentioned, this court may also consider "facts extractable from documentation annexed to or incorporated by reference in the complaint."  Rederford, 589 F.3d at 35.  The assignment (as well as the subsequent assignment mentioned in the text that follows) was attached to LeDoux's original state-court complaint and is referenced in his current complaint, as are all other documents cited or quoted in this order.

[3]At Book 8226, Page 0995.

**B.   Modification efforts and LeDoux's bankruptcy filing**

At some point, Chase began servicing LeDoux's loan.  On June 7, 2009, Chase informed LeDoux that he was in default as a result of his failure to make two consecutive monthly payments, and invited him to contact it.[4]  LeDoux did so, and was told that if he "let it go" another month, he could obtain a loan modification through the federal government's Home Affordable Modification Program ("HAMP").  LeDoux, relying on this representation, continued to refrain from making his loan payments, and Chase provisionally accepted him into HAMP--contingent upon his making timely trial period payments.

Beginning in December 2009, LeDoux made five timely trial payments of $2,170 via Western Union.  Nonetheless, the following April, Chase informed LeDoux that it was unable to offer him a modification under HAMP, ostensibly because his monthly housing expenses did not meet program guidelines.  In that same letter,

---

[4]The second amended complaint alleges--and the documents attached to LeDoux's original complaint confirm--that Chase Home Finance, LLC, was responsible for this communication.  The original complaint alleges that Chase Home Finance, LLC is the former name of JP Morgan Chase, N.A., but this allegation is not repeated in LeDoux's present complaint and there is no other indication in any of the parties' various filings as to what, if any, relationship exists between the two entities.  Defendants' motion to dismiss, however, appears to assume that Chase Home Finance's actions may be attributed to JP Morgan Chase, and the court does so as well for purposes of this order.

Chase told LeDoux that he would "be hearing from us regarding the other programs we have available for you very soon."

Chase did in fact contact LeDoux via telephone, telling him that he could apply for its "other programs" through its website. LeDoux did so, and a short while later, one Shannon Jones, a Chase "relationship manager," contacted LeDoux to guide him through Chase's "special in house process."  Not long thereafter, however, Chase sent LeDoux a letter informing him that it intended to commence foreclosure.  In response, LeDoux contacted Jones, who told him to ignore the letter and assured him that he was still being considered for a modification or other program.

Notwithstanding this assurance, Chase, acting through Haughey, Philpot & Laurent, scheduled a foreclosure sale of LeDoux's property for September 8, 2010.  As that date approached, LeDoux spoke with Jones repeatedly; Jones repeatedly told LeDoux that the foreclosure had been cancelled and that he was still under consideration for a modification.  Again, despite Jones's representations, the sale was not, in fact, cancelled.

LeDoux filed for Chapter 13 bankruptcy on September 7, 2010, in an effort to stave off the then-imminent foreclosure sale. See In re LeDoux, No. 10-13850-JMD (Bkrtcy. D.N.H. Sept. 7, 2010).  Roughly two months later, Haughey, Philpot & Laurent, acting on Chase's behalf, filed a proof of claim in the bankruptcy case, alleging that Chase held a secured claim for

$277,087.23.  The proof of claim attached LeDoux's mortgage, the aforementioned assignments, and the indorsed note and allonge. LeDoux objected to Chase's claim, and subsequently converted his bankruptcy to a Chapter 7 bankruptcy and was granted a discharge.

After his bankruptcy filing, but before the discharge, LeDoux continued to work with Chase's bankruptcy department in the hope of obtaining some sort of relief.  He again applied for a modification through Chase's website.  After additional exchanges, on February 9, 2011, Chase notified LeDoux that he was ineligible for any Chase modification programs (including HAMP), and informed him that he might be eligible for some other foreclosure alternative, such as a short sale or deed-in-lieu of foreclosure.  In a subsequent letter on April 19, 2011, Chase informed LeDoux that "the investor of your loan (the Federal Home Loan Mortgage Corporation, or Freddie Mac) does not participate in any of Chase's alternative modification programs," and again suggested that he pursue other foreclosure alternatives.

On May 4, 2012, Chase contacted LeDoux to provide him information regarding "homeownership counseling services."  The letter also stated that "[w]hile the loan remains in default, a field representative may visit the property to conduct an inspection, and an inspection fee may be assessed to the loan, if permitted by your loan documents or applicable law."  Several weeks later, Haughey, Philpot & Laurent notified LeDoux that

7

Chase had retained it to commence foreclosure.  The next month, Chase again invited LeDoux to apply for a modification.

### C.   Ledoux's "qualified written request"

On November 8, 2010, roughly two months after filing for bankruptcy, LeDoux sent Chase a letter that purported to be a qualified written request under the Real Estate Settlement Procedures Act.  See 12 U.S.C. § 2605(e).  The letter accused Chase of "engag[ing] in unfair, deceptive and possibly fraudulent practices which cannot be explained away as simple paperwork issues, computerized record problems, or incompetence on the part of low level employees . . . for the singular purpose of acquiring MY HOME through foreclosure."  In substance, the letter repeated many of the allegations related above, and also accused Chase of misrepresenting the amount due on the loan; refusing to accept LeDoux's payments; and applying his trial period payments to "one set of books" while "pil[ing] up charges, fees and arrearages to use against ME on another set of books."  LeDoux informed Chase that he was disputing the debt's validity, and requested "clear and readable copies of all pertinent information regarding [the] loan," as well as numerous documents related to the loan (including a number of documents unrelated to the servicing of the loan, such as "[a]ll electronic transfers, assignments, sales of my note, mortgage, deed or other security

8

instrument"). It also demanded "a detailed answer" to over 100 questions spanning nine topical areas.

Chase acknowledged receipt of LeDoux's letter ten days later, and another two months after that it sent a response to the letter to LeDoux's bankruptcy attorney. Chase's response enclosed a detailed transaction history for the period from January 2009 through January 2011; escrow account disclosure statements; and copies of the mortgage, several other origination-related documents, and the note (but not the allonge that Chase had submitted to the bankruptcy court). "Any information or document requested but not included with this package," the cover letter explained, "is unavailable or considered proprietary, and will not be provided."

Rather than providing "a detailed answer" to each of LeDoux's questions, Chase's cover letter provided generalized responses to each of the nine topical areas into which he had divided those questions. In most cases, Chase's generalized responses simply referred LeDoux to the documents enclosed with the letter. The responses also indicated, again, that some of the information LeDoux had requested was "either proprietary or unavailable," but did not identify which particular information was unavailable and which was proprietary, or why.

At its end, the letter invited LeDoux to contact Chase's Loss Mitigation Department to discuss his loan modification

concerns, and to contact Chase's Customer Service Department if he had further questions.  A telephone number for each department was provided.  LeDoux alleges that these numbers directed him to Chase's "first-level customer service department," which refused to speak with him as a result of his bankruptcy filing.

### D.  Procedural history

On June 11, 2012, LeDoux filed suit against Freddie Mac and Chase in Hillsborough County Superior Court; after LeDoux had amended his complaint once, Freddie Mac and Chase removed the case to this court.  After the case was removed here, LeDoux moved to amend the complaint to add Haughey, Philpot & Laurent, P.A. as a defendant.  The court granted that motion, and LeDoux filed a second amended complaint (hereinafter referred to simply as the "complaint").  The motion to dismiss presently before the court followed.

## III.  <u>Analysis</u>

### A.  Authority to foreclose ("Complaint 1")

LeDoux's "Complaint 1" requests an injunction that bars the defendants from foreclosing.  LeDoux asserts that Freddie Mac, in whose name Chase and Haughey, Philpot & Laurent are seeking to foreclose, cannot foreclose on his mortgage because it does not hold the associated promissory note.  Although Crescent Mortgage Services has indorsed the note in blank, LeDoux argues, this

10

indorsement cannot transfer ownership of the note to the bearer--
Freddie Mac--because Crescent itself never obtained possession of
the note.  LeDoux premises this argument on the notion that the
allonge to the note, because it recites an incorrect note date,
is ineffective to indorse the note to Crescent.  Because LeDoux
lacks standing to raise this challenge to the indorsement, this
claim is dismissed.[5]

The parties agree that the note is a negotiable instrument
subject to the provisions of Article 3 of the Uniform Commercial
Code ("UCC"), N.H. Rev. Stat. Ann. § 382-A:3-101 et seq.  Under
the UCC, the holder of an instrument may enforce it.  Id. § 382-
A:3-301.  A holder is "a person who is in possession of an

---

[5]Defendants appear to accept LeDoux's underlying proposition
that possession of the note is a necessary prerequisite to
foreclosure of the mortgage.  The court is not so confident of
the accuracy of this proposition.  In a lengthy, well-reasoned
opinion, Judge Delker of the New Hampshire Superior Court
concluded earlier this year that a mortgagee had the authority to
foreclose even though its ownership of the note was uncertain.
Dow v. Bank of N.Y. Mellon Trust Co., No. 218-2011-CV-1297, slip
op. at 18 (N.H. Super. Ct. Feb. 7, 2012).  Judge Delker
acknowledged, however, that his conclusion was in tension with a
pair of 19th-century opinions of the New Hampshire Supreme Court,
see id. at 7-9 (citing Smith v. Moore, 11 N.H. 55 (1840);
Southerin v. Mendum, 5 N.H. 420 (1831)), and those opinions--
despite their vintage--might require this court to reach a
different conclusion.  See Bartlett v. Mut. Pharm. Co ., Inc.,
759 F. Supp. 2d 171, 193 (D.N.H. 2010) ("As a federal court
exercising diversity jurisdiction over a state-law action, this
court must apply the most recent statement of state law by the
state's highest court.").  Because defendants have not challenged
LeDoux on this point, the court need not confront the thorny
issues it presents, and assumes, arguendo, that Freddie Mac may
not foreclose unless it holds the note.

11

instrument drawn, issued, or indorsed to him or to his order."
Kenerson v. FDIC, 44 F.3d 19, 24 (1st Cir. 1995) (citing N.H.
Rev. Stat. Ann. § 382-A:1-201).  At the outset of the loan, then,
Regency Mortgage Corporation was the holder of the note.

On some unspecified date, Regency affixed the allonge to the
note.  The allonge reads, in pertinent part:

> **ALLONGE TO THAT CERTAIN NOTE DATE:** September 2, 2002
> **IN THE AMOUNT OF** $275,500.00
> **FROM:** Scott E. Ledoux
> **TO:** Regency Mortgage Corporation
>
> **PAY TO THE ORDER OF**
> Crescent Mortgage Services, Inc.
> **WITHOUT RECOURSE**

Document no. 1-2 at 32.  Maureen Brissette, Vice President of
Regency, executed the allonge.  This allonge, as a paper affixed
to the note bearing the signature of a Regency representative,
would--if valid--serve to indorse the note to Crescent, making it
the holder.  See N.H. Rev. Stat. Ann. §§ 382-A:3-204(a), 382-A:3-
205(a); Kenerson, 44 F.3d at 24.  And, if Crescent became the
holder, then its indorsement of the note in blank was sufficient
to make any subsequent bearer of the note a holder.  See N.H.
Rev. Stat. Ann. § 382-A:3-205(b) ("When indorsed in blank, an
instrument becomes payable to bearer and may be negotiated by
transfer of possession alone until specially indorsed.").

But LeDoux says the allonge was not valid.  His complaint does not question the allonge's authenticity.[6]  He claims instead that because the identifying date given for the note on the allonge--September 2, 2002--is not the same date as his note--September 3, 2003--the allonge is not effective as an indorsement of the note.

In other words, LeDoux argues that the technical defect in Regency's indorsement to Crescent means the allonge was void and transfer of the note cannot have occurred.  As an initial matter, the court observes that the UCC does not require an indorsement to describe the instrument being indorsed, see id. § 382-A:3-204, so it is debatable whether an error in such a description would have any legal effect whatsoever.  Even assuming it does, though, the indorsement of a negotiable instrument is a contract, see

---

[6]In a footnote to his opposition memorandum, LeDoux suggests it is a "likely reality" that "the allonge was faked, forged or fabricated."  Memo. in Opp. (document no. 17-1) at 4 n.1.  This allegation appears nowhere in the complaint, however.  Even if it did, moreover, a complaint must "state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion. Iqbal, 556 U.S. at 678.  LeDoux's accusation of forgery is far from plausible (let alone "likely").  The sole fact LeDoux cites in support of this charge is that there was no allonge attached to the copy of the note Chase provided in its response to his November 8, 2010 letter.  But Chase is only the servicer of the loan, not the purported noteholder, so there is no apparent reason Chase would retain a copy of the original note, with allonge, to give to LeDoux after submitting it in his bankruptcy case.  And if the allonge were indeed a forgery, it would scarcely make sense for Chase to present the allonge to the bankruptcy court under penalty of perjury, then not give it to LeDoux himself several months later, thus revealing its misdeed.

Caldwell v. Porter, 17 N.H. 27 (1845), and where a writing "fails to express the intentions the parties had in making the contract," as is alleged here, that is usually only grounds for reformation of the contract, Matter of Lemieux, 157 N.H. 370, 373 (2008). At most, that defect evinces a mutual mistake that would only render the contract voidable, see Gray v. First NH Banks, 138 N.H. 279, 284 (1994), not void, as LeDoux contends.

This distinction is fatal to LeDoux's claim. Where not displaced by the UCC, general principles of contract law apply to negotiable instruments. Mundaca Inv. Corp. v. Febba, 143 N.H. 499, 502 (1999) (citing N.H. Rev. Stat. Ann. § 382-A:1-103); see also Record v. Rochester Trust Co., 89 N.H. 1, 6 (1937) ("[E]xcept as controlled by the specific provisions of the negotiable instruments law, negotiable paper is to be construed like other contracts."). And, as this court recently had occasion to note, "New Hampshire law recognizes the general rule that a debtor cannot interpose defects or objections which merely render [an] assignment voidable at the election of the assignor or those standing in his shoes." Drouin v. Am. Home Mortg. Servicing, Inc., 2012 DNH 089, 7 (quoting Woodstock Soapstone, Co., Inc. v. Carleton, 133 N.H. 809, 817 (1991)). That is precisely what LeDoux seeks to do here in challenging the indorsement--an assignment of the note--by pointing to a defect that appears to be nothing more than a typographical error.

14

This is not simply a failure by LeDoux to state a claim under New Hampshire law; it deprives the court of jurisdiction to entertain his claim. As this court explained in Drouin, the type of claim LeDoux makes here is in essence an attempt to raise the rights of third parties. Id. at 6-7 & n.1. The doctrine of standing--but one facet of Article III's "case or controversy" requirement--dictates that he is therefore not the "proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." Id. at 5-6 (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)). To the extent LeDoux's request for injunctive relief is premised on the theory that the indorsement from Regency to Crescent was ineffective, it must be dismissed.

In a single paragraph of his complaint, LeDoux also suggests he is entitled to relief because the incorrect note date on the allonge shows that it "indorses some other note." See Compl. (document no. 14) ¶ 11. Even if LeDoux has standing to pursue this alternative theory, he does not press it in his opposition, and it does not save his claim in any event. A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; allegations creating "a sheer possibility that a defendant has acted unlawfully" are insufficient. Iqbal, 556 U.S. at 678. One cannot reasonably infer, as LeDoux asks

15

this court to do, that Regency (1) extended another loan in the amount of $275,500 to someone with the exact same name as LeDoux exactly one year to the day before granting him a loan in that exact same amount, (2) attached the allonge to LeDoux's note by mistake, and then (3) forewent any attempt to collect on his loan while Chase did so on Freddie Mac's behalf.  Because the well-pleaded factual allegations of the complaint do not nudge LeDoux's theory "across the line from conceivable to plausible," Twombly, 550 U.S. at 570, LeDoux's passing suggestion that the allonge "indorses some other note" fails to state a claim upon which relief can be granted.  "Complaint 1" is dismissed.

## B.   New Hampshire Consumer Protection Act ("Complaint 2")

In "Complaint 2," LeDoux alleges that the defendants committed unfair and deceptive practices in violation of the CPA, N.H. Rev. Stat. Ann. § 358-A.  Defendants scarcely address this claim in their motion to dismiss, asserting in a footnote that Chase is exempt from suit pursuant to N.H. Rev. Stat. Ann. § 358-A:3, I, which exempts from the CPA "[t]rade or commerce that is subject to the jurisdiction of . . . federal banking or securities regulators who possess the authority to regulate

unfair or deceptive trade practices."[7]   This argument is
insufficiently developed to warrant dismissal at this time.

As this court recently noted, to determine whether trade or
commerce is "subject to the jurisdiction of" a regulator, the
court "must examine the statutes that define the [regulator's]
powers and authority." Elmo v. Callahan, 2012 DNH 144, 24-25
(quoting Rainville v. Lakes Region Water Co., Inc., 163 N.H. 271,
275 (2012)).   "If those statutes grant the [regulator] the
authority to supervise or regulate the trade or commerce in which
the defendants' deceptive practice occurred, then that trade or
commerce is 'subject to the jurisdiction of' the [regulator], and
the CPA does not apply." Id. at 25.   In their opening
memorandum, defendants do not even identify the specific
regulators they say have jurisdiction over the trade or commerce
at issue, let alone the statutory basis for their authority.   In
their reply memorandum, defendants suggest that the Office of the
Comptroller of the Currency ("OCC") is "responsible for" Chase--
again failing, however, to identify any statutory basis for the
OCC's authority, or even cite controlling case law for that
proposition.   Defendants also fail to explain, moreover, how

_____

    [7]In the same footnote, defendants argue that any references
to the CPA "appear to be 'leftover' from a prior pleading" and
arguing that this court should therefore "refrain from
entertaining" the CPA claim.   Memo. in Supp. (document no. 16-1)
at 5 n.3 (citing Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir.
1997)).   At oral argument, defendants withdrew this argument, so
the court does not address it here.

being "responsible for" a defendant is equivalent to having "the authority to supervise or regulate the trade or commerce in which the defendants' deceptive practice occurred."  See id.

"The burden of proving exemptions from the provisions of [the CPA is] upon the person claiming the exemption."  N.H. Rev. Stat. Ann. § 358-A:3, V.  By sketching the outline of an argument in a footnote and leaving it to the court to fill in key details, defendants have not carried that burden.  This is not to say, of course, that defendants' argument is meritless.  If defendants wish to renew their argument in more detail in a motion for judgment on the pleadings or summary judgment, they are free to do so.  Their motion to dismiss LeDoux's CPA claim is denied.

## C.  Fair Debt Collection Practices Act ("Count I")

In "Count I" of his complaint, LeDoux seeks recovery under the FDCPA, 15 U.S.C. § 1692 et seq.  He alleges that defendants violated a number of FDCPA provisions in a number of ways, allegations that appear to be premised in large part on the dubious assertion that "there are no creditors for whom any debt collection activities could be lawfully pursued."  Compl. (document no. 14) ¶ 54.  Defendants argue that LeDoux's FDCPA claim must be dismissed because, wholly apart from its suspect basis, the alleged misconduct either fell outside the FDCPA's one-year limitations period or was not prohibited by the FDCPA in the first place.  The court agrees that the statute of

18

limitations prevents LeDoux from recovering for most of the misconduct alleged in support of this claim.  Because the remaining misconduct arguably falls within the ambit of the FDCPA, however, the claim cannot be dismissed.

The FDCPA "prohibit[s] a broad range of conduct by debt collectors." Moore v. Mortgage Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 123 (D.N.H. 2012).  Among other things, the act forbids the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt,"[8] 15 U.S.C. § 1692e, as well as the use of "unfair or unconscionable means to collect or attempt to collect any debt," id. § 1692f; these general prohibitions are supplemented by more specific prohibitions.  See generally id. §§ 1692b–1692j.  To recover under the FDCPA, LeDoux must show that:  "(1) [he has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the [Act]." Moore, 848 F. Supp. 2d at 124 (quoting Beadle v. Haughey, 2005 DNH 016, at 7).

Even if he has shown all these things, though, LeDoux may only recover if he brought suit "within one year from the date on

---

[8]"Debts," for purposes of the FDCPA, include both actual and alleged consumer obligations. 15 U.S.C. § 1692a(5).

which the violation occur[red]." 15 U.S.C. § 1692k(d); see
Poulin v. The Thomas Agency, 760 F. Supp. 2d 151, 157-58 (D. Me.
2011). Nearly all the alleged conduct that forms the basis for
LeDoux's FDCPA claim occurred more than one year before LeDoux
filed this suit on June 11, 2012. See Compl. (document no. 14)
¶¶ 55-59; 62-63. LeDoux concedes this, but argues that "just
because the allegations may be time-barred by the FDCPA does not
mean that they didn't happen" and suggests that he may use
evidence of time-barred FDCPA violations "to show background, to
establish a foundation for other evidence, [or] to show [his]
vulnerable state of mind and establish the extent of general
damages." Memo. in Opp. (document no. 17-1) at 11-12 (quoting
Joseph v. JJ Mac Intyre Cos., LLC, 281 F. Supp. 2d 1156, 1162
(N.D. Cal. 2003)). Whether or not the alleged pre-June 11, 2011
violations have any evidentiary value--and this court takes no
position on that issue at present--they plainly fall outside the
limitations period, as LeDoux acknowledges. To the extent "Count
I" is premised on those violations, it fails to state a claim
upon which relief can be granted. The court does not agree,
however, that the FDCPA claim is subject to dismissal in its
entirety (at least not for the reasons defendants have advanced).

Two of the alleged FDCPA violations did occur within the
limitations period. First, on May 4, 2012, Chase sent LeDoux a
letter regarding his debt, which mentioned the possibility that

inspection fees could be assessed on his loan (but only "if permitted by [LeDoux's] loan documents or applicable law"). Second, on May 30, 2012, Haughey, Philpot & Laurent sent LeDoux a letter informing him that Chase had retained it to foreclose on his mortgage.  That letter also provided contact information for Chase in the event LeDoux wished to attempt a workout.

LeDoux claims that both letters violated 15 U.S.C. §§ 1692e(2)(A) & (10), and that the second letter also violated 15 U.S.C. § 1692f(6)(A).  Defendants argue, though, that these letters cannot support LeDoux's FDCPA claim because the May 4 letter "on its face did not attempt to even collect the debt," and the May 30 letter is not subject to the FDCPA because it was merely an attempt to "enforc[e a] security interest."  Defts.' Surreply (document no. 21) at 3.  This is not persuasive.

Defendants' argument proceeds from the assumption that to fall within the scope of the FDCPA, a communication must be an explicit collection attempt.  But defendants fail to cite any authority for this proposition, and the FDCPA itself implies otherwise, prohibiting certain practices "in connection with the collection of any debt," 15 U.S.C. § 1692e (emphasis added), language that implies a broad application not strictly limited to demands for payment.  Case law, too, supports the conclusion that the FDCPA's reach is not nearly so narrow.  See Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) ("The text

of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one."); Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010) ("[A] communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather . . . a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA.").

The relevant inquiry is not whether the May 4 and May 30 letters attempted to collect the debt or to enforce a security interest--as defendants frame the issue--but whether they were made "in connection with" the collection of a debt, 15 U.S.C. § 1692e, i.e., in an effort "to induce payment by the debtor." Grden, 643 F.3d at 173. Viewing the letters in the context alleged in the complaint, and drawing all reasonable inferences in LeDoux's favor, both letters can be viewed as attempts to persuade LeDoux to pay his debt by threatening, respectively, to charge fees to LeDoux as long as he remained in default and to foreclose.[9]  While, as already alluded to, the court harbors

---

[9]The court's conclusion should not in any way be taken as an indication that any communication relating to a foreclosure potentially falls within the scope of the FDCPA.  The specific language of the May 30 letter--particularly its invitation to LeDoux to contact Chase regarding the repayment of his debt--as well as the context in which that letter arose bear heavily on the decision here.  The court remains agnostic as to whether a foreclosure itself constitutes debt collection activity for

serious doubts about the eventual success of LeDoux's FDCPA claim, that claim may proceed––for now.

### D.   Real Estate Settlement Procedures Act ("Count II")

"Count II" of LeDoux's complaint also invokes a federal statute––RESPA, 12 U.S.C. § 2601 et seq. LeDoux alleges that his November 8, 2010 letter to Chase constituted a qualified written request ("QWR") under 12 U.S.C. § 2605(e)(1)(B), and that, by failing to provide all the information he requested and contact information for an individual or department who could provide him with further assistance, Chase violated RESPA and is liable to him for actual and statutory damages. Defendants argue that the complaint does not allege facts comprising a RESPA violation.[10] They are wrong.

A QWR is written correspondence from a borrower to the servicer of a "federally related mortgage loan" that either seeks information regarding the servicing of the loan or requests a correction to the account and provides reasons for the borrower's belief that the account is in error. Id. § 2605(e)(1)(B). The servicer must acknowledge receipt of the QWR within 20 business

purposes of the FDCPA. See Moore, 848 F. Supp. 2d at 124-25 & n.11.

[10]In their opening memorandum, defendants also argue that LeDoux lacks standing to pursue his RESPA claim because that claim is the property of his bankruptcy estate. In their reply memorandum, defendants have withdrawn that argument, so the court does not address it here.

days, id. § 2605(e)(1)(A), and provide a more complete response
to the borrower within 60 business days, id. § 2605(e)(2).[11]
Failure to fulfill these obligations subjects the servicer to
liability for "any actual damages to the borrower as a result of
the failure," or, "in the case of a pattern or practice of
noncompliance," statutory damages.  Id. § 2605(f)(1).

Defendants do not argue that LeDoux's letter was not a QWR
as defined by the statute, or that his loan is not a "federally
related mortgage loan."  They argue instead that Chase's response
to the letter complied with all pertinent provisions of RESPA.
The response, they say, gave LeDoux the information he requested,
and where it did not provide that information, it gave him "an
explanation of unavailability."  They further note that Chase's
response provided LeDoux with department contacts.

It is true that Chase provided LeDoux with a great deal of
the information he requested, and defendants' motion may have
some merit insofar as LeDoux characterizes parts of Chase's
response as RESPA violations when they do not appear to be.  But,

---

[11]In July of 2010, Congress amended RESPA to shorten the
time period under § 2605(e)(1)(A) from 20 days to five days, and
to shorten the time period under § 2605(e)(2) from 60 days to 30
days.  See Dodd-Frank Wall Street Reform and Consumer Protection
Act, Pub. L. No. 111-203, § 1463(c) (2010).  Those amendments
were not yet effective during the time period relevant to this
action, however, and will not become effective until "18 months
after the designated transfer date" of July 21, 2011.  See id. §
1400(c); Designated Transfer Date, 75 Fed. Reg. 57,252 (Sept. 20,
2010).

accepting LeDoux's allegations as true, the court cannot say that Chase gave LeDoux everything that RESPA requires.  Where, as was the case here, a borrower makes a specific inquiry requesting information about his or her loan, the servicer must:

> after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
>> (i) information requested by the borrower or an explanation of why the information is unavailable or cannot be obtained by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2)(C).  The allegations of LeDoux's complaint and supporting documents state a plausible claim that Chase did not comply with either directive.

As discussed in Part II.C supra, Chase's response indicated, in multiple places, that certain information was "unavailable or considered proprietary, and will not be provided."  It did not identify which specific information was unavailable and which was proprietary.  If Chase considered certain information to be "unavailable" because it was "proprietary," its response did not say so.  Nor, for that matter, did it give any other explanation as to why the information requested was unavailable.  RESPA requires more than just a blanket assertion that the information requested by a borrower is unavailable; it requires an "explanation of why the information is unavailable." Id.

§ 2605(e)(2)(C)(i) (emphasis added); cf. McDonald v. OneWest
Bank, FSB, No. C10-1942RSL, 2012 WL 555147, *2 (W.D. Wash. Feb.
21, 2012) (rejecting "the proposition that any response, no
matter how cursory and uninformative, shields a loan servicer
from RESPA liability").  Chase did not give LeDoux such an
explanation.

Chase also failed to give LeDoux "the name and telephone
number of an individual employed by, or the office or department
of, the servicer who can provide assistance to the borrower."
Id. § 2605(e)(2)(C)(ii).  Chase's response did give LeDoux "the
name and telephone number of" an "office or department"--in fact,
it gave LeDoux this information for two departments, Chase's Loss
Mitigation and Customer Service Departments.  LeDoux alleges,
however, that when he called those departments, they refused to
speak with him as a result of his bankruptcy filing.  In other
words, neither department was willing or able to "provide
assistance to the borrower," making the numbers to those
departments useless to LeDoux.[12]  This, too, makes out a

_____

[12]LeDoux alleges that shortly after his bankruptcy filing
(and before he sent his November 8 letter), someone in Chase's
"Help for Homeowners" department told him that because of his
bankruptcy filing, no one in that department could speak to him.
Compl. (document no. 14) ¶ 40.  That person then referred him to
Chase's bankruptcy department.  Id.  Defendants' memoranda
suggest that this referral somehow ameliorated Chase's failure to
provide the contact information required by RESPA.  Based upon
the information before the court, however, there is no reason to
believe that the bankruptcy department would have been able to
assist LeDoux in answering the questions posed in his QWR.  Even

plausible claim for relief under RESPA.  See, e.g., Crispin v. BAC Home Loans Servicing, LP, No. 11-cv-375, 2011 WL 6294319, *5 (E.D.N.C. Dec. 15, 2011) (denying motion to dismiss RESPA claim where the plaintiff alleged that "the individual whose name he was given as someone who could help him told Plaintiff she cannot provide such assistance").  Defendants' motion to dismiss LeDoux's RESPA claim is denied.

### E.    Fraud ("Count III")

"Count III" of LeDoux's complaint purports to state a claim against Chase for common-law fraud.  "[T]he whole basis of the fraud," LeDoux explains in his opposition memorandum, is that Chase repeatedly told him that he might be eligible for a non-HAMP modification, even though such a modification was ultimately not available to him because Freddie Mac did not participate in any of Chase's non-HAMP modification programs.  Defendants, invoking Rule 9(b) of the Federal Rules of Civil Procedure, argue that LeDoux has not pleaded fraud with the requisite particularity.  The court agrees.

Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances committing

---

if the bankruptcy department could have done so, moreover, the
pre-QWR referral to that department at most reduces the damages
LeDoux suffered from Chase's failure to include appropriate
contact information in its response.  It does not mean that
LeDoux cannot recover at all for that violation of RESPA.

fraud or mistake."  This heightened standard, which "applies to
state law fraud claims asserted in federal court," N. Am.
Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8,
13 (1st Cir. 2009), "means that a complaint rooted in fraud must
specify the who, what, where, and when of the allegedly false or
fraudulent representations." Moore, 848 F. Supp. 2d at 130.  Per
the Court of Appeals, it also means that "a complaint's general
averment of the defendant's 'knowledge' of material falsity" is
inadequate "unless the complaint also sets forth specific facts
that make it reasonable to believe that [the] defendant knew that
a statement was materially false or misleading." Cardinale, 567
F.3d at 13 (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25
(1st Cir. 1992)) (emphasis in original).  It is this latter
aspect of the rule on which defendants seize.  They argue that
LeDoux's allegations contain only a "general averment" of Chase's
knowledge, and fail to plead any "specific facts that make it
reasonable to believe" that Chase knew that Freddie Mac did not
participate in any of its non-HAMP modification programs at the
time it told him he would be considered for those programs.

       After painstaking review of the complaint, the court, like
defendants, has been unable to find any facts alleged from which
one can reasonably infer that Chase knew its statements were
false or misleading.  The only allegation of Chase's knowledge
is, as defendants argue, simply a generalized averment that Chase

"knew that Freddie Mac doesn't accept any mortgage modifications from Chase except HAMP modifications." Compl. (document no. 14) ¶ 79. That assertion, however, "is not itself supported with particulars that suggest scienter," as required by Rule 9(b). Cardinale, 567 F.3d at 13. The bare fact that Chase serviced LeDoux's loan on behalf of Freddie Mac is, standing alone, not enough to suggest that Chase knew Freddie Mac would not accept non-HAMP modifications at any point before Chase led LeDoux to believe otherwise.[13]

---

[13]In his opposition memorandum, LeDoux contends that Chase must have known, based upon "Freddie Mac Bulletin Number 2009-6," a memorandum Freddie Mac sent to its servicers on March 11, 2009, that Freddie Mac would not accept non-HAMP modifications from Chase. That document is neither referenced in the complaint nor attached to it, and therefore not properly before this court. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (with narrow exceptions not applicable here, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden" when ruling on a motion to dismiss).

Moreover, taking that document, which is available online at http://www.freddiemac.com/sell/guide/bulletins/pdf/bll096.pdf (last visited November 15, 2012), into account would not change the outcome. The document merely introduces the HAMP program for Freddie Mac servicers and retires the "Streamlined Modification Program." Nowhere does it state, or even imply, that Freddie Mac will not consider borrowers for other types of modifications; to the contrary, the document expressly invites servicers to consider HAMP-ineligible borrowers for other alternatives to foreclosure. See id. at 4. To the extent that LeDoux seeks leave to amend his complaint to include allegations regarding this document, that request is therefore denied. If, in the future, LeDoux discovers any facts that make it reasonable to believe that Chase knew that Freddie Mac would not accept non-HAMP modifications at the time of its allegedly misleading communications, he may seek leave to amend his complaint to add those facts to the complaint and renew his fraud claim.

To establish fraud under New Hampshire law, a plaintiff must show "that the representation was made with knowledge of its falsity or with conscious indifference to its truth." Tessier v. Rockefeller, 162 N.H. 324, 332 (2011). Because LeDoux's complaint fails to allege this element of his fraud claim in accord with Rule 9(b), "Count III" is dismissed.

## IV.  **Conclusion**

For the reasons set forth above, the motion to dismiss of defendants JP Morgan Chase, N.A. and Federal Home Loan Mortgage Corporation[14] is GRANTED in part and DENIED in part.  LeDoux's claims for injunctive relief ("Complaint 1") and fraud ("Count III") are dismissed.  The motion is denied as to the remaining claims.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  November 20, 2012

cc:  Scott LeDoux (pro se)
     Peter G. Callaghan, Esq.
     William Philpot, Jr., Esq.

---

[14]Document no. 16.