UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Scott LeDoux, *Pro Se* ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case Number: 1:12-CV-260-JL |
| J.P. MORGAN CHASE N.A. and ) | |
| FEDERAL HOME LOAN ) | |
| MORTGAGE CORPORATION and ) | |
| HAUGHEY, PHILPOT & LAURENT P.A. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S THIRD AMENDED PETITION TO ENJOIN A FORECLOSURE SALE and COMPLAINTS OF UNFAIR AND DECEPTIVE PRACTICES IN VIOLATION OF THE NEW HAMPSHIRE CONSUMER PROTECTION ACT**

The Plaintiff Scott LeDoux ("LeDoux") of 7 Leel Road, New Ipswich, New Hampshire 03071 ("the property"), moves this Honorable Court to grant him injunctive and other relief related to the imminent foreclosure (sale under the power) of his home and to his claim(s) under the NH Consumer Protection Act codified in NH RSA 358-A, and others as more fully set forth herein. Plaintiff makes the following complaints and allegations.

**Complaint 1: Petition to Enjoin a Foreclosure Sale**

**Background**

1.  Defendant J.P. MORGAN CHASE N.A. ("Chase") is a National Association and a wholly owned subsidiary of JP Morgan Chase & Co. headquartered at 270 Park

Case 1:12-cv-00260-JL   Document 40   Filed 03/13/13   Page 2 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.   Civil Case Number 1:12-CV-260-JL

Avenue, New York, NY 10017. Chase is an agent or mortgage servicer to the mortgagee.

2. Defendant FEDERAL HOME LOAN MORTGAGE CORPORATION ("Freddie Mac") is operating in conservatorship under the direction of the FHFA and headquartered at 8200 Jones Branch Drive, McLean VA 22102. Freddie Mac is Chase's principal and alleged mortgagee.

3. Defendant HAUGHEY, PHILPOT & LAURENT, P.A. ("HPL") is a New Hampshire law firm with its primary offices at 816 North Main Street Laconia, NH 03246. HPL was agent and attorney for the other defendants.

4. This Court has jurisdiction pursuant to 28 USC 1331.

5. On September 2, 2003 Plaintiff executed a promissory note ("the note") in the amount of $275,500, and a mortgage ("the mortgage"), both in favor of Regency Mortgage Corporation ("Regency").

6. On September 3, 2003 Regency allegedly assigned the note and the mortgage to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS ("MERS") as Nominee for Crescent Mortgage Services Inc. ("Crescent")

7. On July 30, 2010 MERS as Nominee for Crescent allegedly assigned the note and the mortgage to Freddie Mac.

8. On September 7, 2010 Plaintiff filed for Chapter 13 bankruptcy protection (case number 10-13850-JMD) to stop foreclosure proceedings, and cancel an auction of the property scheduled for September 8, 2010.

9. On November 23, 2010 Chase as servicer for Freddie Mac filed a secured claim in bankruptcy court under the note and mortgage in the amount of $277,087. The claim

Case 1:12-cv-00260-JL   Document 40   Filed 03/13/13   Page 3 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

        included a copy of a note, several pages from the mortgage, and the two mortgage assignments from paragraphs 6 and 7 above. See Affidavit/Attachment POC12 ("POC12").

10. The last pre-printed page of the copy of the note from POC12 contains an indorsement in blank by Crescent. The note also includes an allonge indorsing a note from Regency to Crescent that recites "allonge to that certain note date: September 2, 2002 in the amount: $275,500 from: Scott E. LeDoux."

11. The allonge fails to indorse the note because there is no such note. The allonge indorses some other note, and not the note Plaintiff signed on September 2, 2003.

12. On March 14, 2011 Plaintiff objected to Chase's claim.

13. On September 12, 2011 Plaintiff converted his Chapter 13 bankruptcy to a Chapter 7 bankruptcy, obviating the need for any further litigation as to the validity of POC12, since there would be no further Chapter 13 payments to anyone.

14. On January 23, 2012 Plaintiff was granted a discharge as to all debt in the Chapter 7 bankruptcy, including any obligations to the note.

15. On May 14, 2012 Plaintiff's bankruptcy case formally closed.

16. On May 30, 2012 Chase again notified Plaintiff that they intend to foreclose pursuant to the mortgage (sale under the power), which is the cause of the instant action. See Affidavit/Attachment CHASE PAPERS, Exhibit 13.

**Arguments**

17. Plaintiff denies that a default to the holder of the note exists.

18. The Defendants do not possess the original note and the allonge is not attached to their copy of the note.

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 4 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al. Civil Case Number 1:12-CV-260-JL

19. Even if Freddie Mac is in possession of the note, it is not the proper holder of the note pursuant to the Uniform Commercial Code as adopted in New Hampshire, codified in New Hampshire RSA 382-A ("UCC").

20. The allonge to the note fails to indorse the note (paragraphs 9-11 above). Therefore, Regency never negotiated the note to Crescent. "If an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." See UCC 3-201(b). "Negotiation of the instrument does not occur until the indorsement is made." See UCC 3-203(c). Lacking negotiation, Crescent never became a holder. Lacking holdership, Crescent could not have negotiated the note to Freddie Mac.

21. Freddie Mac has alleged that it now owns the note and is entitled to enforce it, but Freddie Mac is not a person entitled to enforce the note pursuant to UCC 3-301. Freddie Mac is not the holder. Freddie Mac is not a non-holder in possession with the rights of a holder. Freddie Mac has not alleged a lost or stolen note.

22. Freddie Mac has no enforceable interest in the mortgage. The mortgage assignment executed on July 30, 2010 alleges assignment of the mortgage and the note from "MERS as Nominee for Crescent" to Freddie Mac, but 1) Promissory notes aren't taken by assignment, promissory notes are taken by negotiation pursuant to the UCC, and 2) Crescent was not the holder of the note, and therefore had no right to "assign" the note, or it's security, the mortgage. One can't assign what one doesn't have.

23. There are additional problems with the July 30, 2010 mortgage assignment. It appears that the assignment was executed by a "MERS Assistant Secretary" Mark H. Lamper ("Lamper"), but in fact Lamper was an attorney-employee at the attorney for

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 5 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al. Civil Case Number 1:12-CV-260-JL

      the assignee's firm Haughey, Philpot & Laurent, P.A. ("HPL"). See Affidavit/Attachment CHASE PAPERS, Exhibit 13. The witness & notary Holly C. Fish ("Fish") was also an employee at HPL.

24. This masquerade serves to hide the fact that the putative agents for assignor and assignee were actually members of the same law firm HPL, and it was HPL that represented Chase and Freddie Mac in this action, prior to its removal to this Court. This was an apparent violation of the New Hampshire rules of Professional Conduct 1.7, unless both Crescent and Freddie Mac have consented to dual representation pursuant to Rule 1.7(b)(4) "each affected client gives informed consent, in writing".

25. HPL engaged in dual representation in the first foreclosure, as well as Plaintiff's bankruptcy proceedings, as well as the instant action prior to its removal.

26. On information and belief, Lamper is not an officer of MERS, nor did Lamper receive any instructions from MERS as Nominee for Crescent to assign the mortgage, nor did Crescent issue any directives to MERS as Nominee for Crescent to assign the mortgage.

27. On information and belief, the July 30, 2010 mortgage assignment is a faked, forged, fabricated or otherwise designed document; created and recorded to represent to the public an impossible transaction that simply could not have occurred.

**Complaint 2: Unfair and Deceptive Practices in Violation of the NH Consumer Protection Act with Request for a Jury Trial**

**Background**

28. All allegations from the foregoing paragraphs above are incorporated here and re-alleged by reference.

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 6 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al. Civil Case Number 1:12-CV-260-JL

29. On June 7, 2009 Chase Home Finance LLC ("Chase") declared the note and mortgage in default for two payments and invited Plaintiff to call them to discuss the alleged default.

30. Plaintiff did call Chase to discuss the situation, and was told to "let it go" another month, then he could get a loan modification through participation in Chase's implementation of the of the Obama Administration's Home Affordable Modification Program ("HAMP"), a part of the Administration's Making Home Affordable ("MHA") program.

31. Based on what he was told, Plaintiff allowed the loan to default in preference to the embarrassment he would suffer seeking the funds from friends and family.

32. After a series of false starts due to missing or lost or dated information, Chase accepted Plaintiff into their MHA program subject to Plaintiff making his "trial payments" on time.

33. Plaintiff made five trial payments of $2,170 on time each month beginning December 31, 2009 via the Western Union service. See Affidavit/Attachment QWR RESPONSE, exhibit 61, Reference numbers: 221, 223, 226, 230, 233.

34. On April 27, 2010 Chase wrote to Plaintiff and ejected him from their MHA program because his housing expenses did not meet the guidelines of the program, even though Chase was in possession of all of Plaintiff's financial information including his income and expenses the entire time (having asked for, and received it five times). See Affidavit/Attachments CHASE PAPERS, Exhibits 2, 4, 5, 7, 8.

35. Chase also told Plaintiff "You will be hearing from us regarding the other programs we have available for you very soon". Id. Exhibit 9.

Case 1:12-cv-00260-JL   Document 40   Filed 03/13/13   Page 7 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

36. Chase did contact Plaintiff by telephone and directed him to the same MHA program web site (Chase.COM) with assurances that this also operated as the front end to their "other programs". Plaintiff followed Chase's instructions and applied to their "other programs" via the MHA program web site at the "HELP FOR HOMEOWNERS" link.

37. Soon thereafter Plaintiff was contacted by Mr. Shannon Jones, who represented himself to be a Chase "relationship manager", who would guide Plaintiff through their "special in house process".

38. In June 2010 Chase sent Plaintiff another MHA program rejection letter and stated that foreclosure proceedings would commence. Plaintiff contacted Mr. Jones who assured him that no, he wasn't rejected, in fact he "has something positive from the investor" at that very moment, and to ignore the letter.

39. An auction of the property was ultimately scheduled for September 8, 2010. As the date approached Plaintiff spoke with Mr. Jones many times and was repeatedly told that "the foreclosure was cancelled, the modification approved and paperwork was on the way", but the foreclosure never got canceled, so Plaintiff filed for Chapter 13 bankruptcy protection on September 7, 2010 to stop it.

40. Soon thereafter, Plaintiff called Chase to speak with Mr. Jones and enquire as to the whereabouts of his permanent modification paperwork. Plaintiff was told that nobody in the HELP FOR HOMEOWNERS department could speak to him, now that he was in bankruptcy, and referred Plaintiff to Chase's "bankruptcy department".

Case 1:12-cv-00260-JL   Document 40   Filed 03/13/13   Page 8 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

41. Soon thereafter, Plaintiff spoke with Chase's bankruptcy department who informed him that he "was not approved for a modification, but that they could definitely get his loan modified, now that he was in bankruptcy".

42. Chase's bankruptcy department then directed Plaintiff to the same MHA website he'd visited on several occasions previously.  The website remained Chase.COM.  The "link" remained "HELP FOR HOMEOWNERS".  Plaintiff was told to ignore the fact that it was their MHA program web site, and that his application would be handled differently using "special bankruptcy processes", now that he was in bankruptcy.

43. Plaintiff did so apply, again.

44. On November 8, 2010 Plaintiff sent Chase a Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act.  Plaintiff also sent copies to Jamie Dimon (CEO of Chase), the Comptroller of the Currency ("the OCC"), Assistant NH Attorney General Karen Gorham, representing NH in the "50 state Attorney General's task force probing foreclosure abuses", the NH Attorney General's Consumer Protection and Antitrust Bureau, the Congressional Oversight Panel for TARP, and his bankruptcy attorney.  See Affidavit/Attachment QWR.

45. The complaints and allegations from the QWR on pages 2 and 3 are incorporated here and re-alleged by reference.

46. On November 18, 2010 Chase's Home Lending Executive Office acknowledged Plaintiff's QWR and assigned Mikko Parker to be Plaintiff's "executive specialist" regarding his mortgage modification.  See Affidavit/Attachment CHASE PAPERS, exhibit 10.05.

Case 1:12-cv-00260-JL   Document 40   Filed 03/13/13   Page 9 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

47. Plaintiff contacted Ms. Parker, who represented to him that she reported directly to the CEO's office, and would absolutely help Plaintiff get his loan modified using a special executive process, if Plaintiff would simply submit his MHA Application to her fax machine.

48. Plaintiff did submit his MHA application to her fax machine.

49. On December 2, 2010 the OCC responded to Plaintiff's QWR, assigned complaint number #01373749 ("the OCC complaint"), and asked Chase to look into the matter. Id. exhibit 14.

50. On December 8, 2010 Chase wrote to Plaintiff and informed him that documentation for his MHA application was missing, again.  Plaintiff supplied the information, again.  Id. Exhibit 10.1.

51. On February 9, 2011 Plaintiff was notified that he was ineligible for MHA or "any Chase modification program."  Id. Exhibit 10.2.  This final modification attempt with Chase took most of five months to arrive at this result, since the post-bankruptcy filing, that the executive process was supposed to expedite.

52. On April 19, 2011, The Chase Home Lending Executive Office responded to the OCC complaint, but did not address the complaints in Plaintiff's QWR.  Chase also used this letter to inform Plaintiff for the very first time that "the investor of your loan (the Federal Home Loan Mortgage Corporation, or Freddie Mac) does not participate in any of Chase's alternative mortgage programs.", Id. Exhibit 11, almost one full year after Chase first told Plaintiff that he would be hearing about "the other programs we have available for you very soon".  Id. Exhibit 9.

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 10 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al. Civil Case Number 1:12-CV-260-JL

## Count I

## Defendants violated the Fair Debt Collection Practices Act

53. All allegations from the foregoing paragraphs above are incorporated here and re-alleged by reference.

54. As strangers to the debt, Defendants Chase and Freddie Mac are debt collectors pursuant to 15 USC 1692 *et seq*. ("FDCPA"), and there are no creditors for whom any debt collection activities could be lawfully pursued. Defendant HPL is a debt collector pursuant to the FDCPA. Plaintiff is a consumer pursuant to the FDCPA.

55. Defendant Chase violated FDCPA e (2)(A) by representing that an alleged debt was in default and violated FDCPA f (1) by assessing late fees in a letter dated June 7, 2009. See Affidavit/Attachment CHASE PAPERS, exhibit 1.

56. Defendant Chase violated FDCPA e (10) by enticing Plaintiff to enroll in several mortgage modification programs and obtained unauthorized access to his financials including pay and tax information as part of the application process.

57. Defendants violated FDCPA e (2)(A) and FDCPA e (8) and FDCPA e (10) and FDCPA f (6)(A) by advertising a foreclosure sale under the power in the Manchester Union Leader for three consecutive weeks in August 2010. See Affidavit/Attachment PUBLIC NOTICES.

58. Defendant Chase violated FDCPA f (6)(A) when it threatened foreclosure in a letter dated February 9, 2011. See Affidavit/Attachment CHASE PAPERS, exhibit 10.2.

59. Defendant Chase violated FDCPA e (2)(A) and FDCPA e (8) and FDCPA c (b) when it communicated to the OCC and the NH Attorney General's office in a letter dated April 19, 2011, that the alleged debt was in default and foreclosure. Id, exhibits 11, 11A.

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

60. Defendant Chase violated FDCPA e (2)(A) and FDCPA e (10) and stated their intent to add inspection fees in violation of FDCPA f (1) in a letter dated May 4, 2011, representing that the alleged debt was in default and that inspection fees would be assessed.  Id, exhibit 12.

61. Defendants violated FDCPA e (2)(A) and FDCPA e (10) and FDCPA f (6) (A) when HPL notified Plaintiff of Chase's intent to foreclose, naming Defendant Freddie Mac as the current creditor, and represented that the alleged debt was in default on May 30, 2012.  Id, exhibit 13.

62. Defendant Chase has been collecting payments on the note, and has collected "trial payments" pursuant to a loan modification, both in violation of FDCPA f (1).

63. Defendant HPL violated FDCPA e (2)(A) and FDCPA e (8) and FDCPA e (10) by recording the July 30, 2010 mortgage assignment reflecting a transaction that did not occur.

64. Defendants' relentless pursuit of a debt not owed to them has caused Plaintiff to suffer mental anguish, stress and physical symptoms of stress including lost sleep, stomach aches and headaches.

65. Plaintiff had to enter an expensive chapter 13 bankruptcy that he didn't otherwise need but for its ability to stop the Defendants foreclosure activities.

66. Plaintiff's personal relationships suffered because his children and his spouse constantly worried about "when the bank would take their home".  His spouse and his children ultimately did lose their home to divorce in September 2011 and one contributing factor to that divorce was all the time Plaintiff spent defending against

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 12 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

the debt and prosecuting his bankruptcy, where such time could have better served his family.

### Count II

### Defendant Chase violated the Real Estate Settlement Procedures Act, keeping information about the alleged debt from Plaintiff

67. All allegations from the foregoing paragraphs above are incorporated here and re-alleged by reference.

68. On January 20, 2011 Chase responded to a QWR written by Plaintiff with seventy (70) pages of information, and stated in its correspondence that "any information or document requested but not included with this package is unavailable or considered proprietary, and will not be provided." See Affidavit/Attachments QWR RESPONSE, Exhibit 1.

69. Plaintiff needed this information to ascertain the loan's history relevant to payments made to the account and charges made against the account, so that an independent audit could verify the debt.  The information returned by Chase did not provide anything that Plaintiff could use to verify the debt.

70. Chase violated RESPA (e)(2)(B)(ii) and RESPA (e)(2)(C)(ii) by failing to provide information to contact an individual who could answer questions about the QWR response or contact information to a department who could answer questions about the QWR response. No individuals were identified, and the departmental contact information provided was to Chase's first-level customer service department, who refused to talk to the Plaintiff once they learned Plaintiff was in bankruptcy.  See Affidavit/Exhibit QWR RESPONSE, Exhibit 5.

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 13 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

71. Chase violated RESPA (e)(2)(C)(i) when Chase used three blanket "unavailable or considered propriety" phrases to answer questions posed in the QWR, but never identified whether particular information was proprietary, or was unavailable; and never reached to why particular information was proprietary or was unavailable. Id, Exhibits 3,4.

72. Part of Plaintiff's QWR included a request for a copy of the note as well as any allonges which by definition must be part of the note.

73. Included in Chase's QWR response was a three page copy of a note payable to Regency but indorsed in blank by Crescent. In contrast to the copy of the note submitted to bankruptcy court, there was no allonge to the note in Chase's QWR response. Id, exhibits 7-9 (a promissory note).

74. The copy of the note in Chase's QWR response is different in this respect from the copy of the note submitted to the bankruptcy court (POC12) when only one of them can purport to be a real copy of the note.

75. Defendants either submitted false documents to the bankruptcy court, or submitted false or incomplete documents to Plaintiff.

76. In response to questions posed by the QWR, Plaintiff was directed to a non-existent loan history reconciliation six times. Id. exhibits 3,4.

77. The lack of usable information, combined with confusing responses where supplied, combined with the knowing omissions of the allonge caused Plaintiff suffer additional and intensified non-monetary damages the same as alleged in Complaint 2 Count I 64-66, above. Plaintiff also wasted his time and his bankruptcy attorney's

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 14 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al.  Civil Case Number 1:12-CV-260-JL

time (and fees) trying to make sense of Chase's response in light of the deficiencies as alleged above, and in light of the confusing copy of the note.

### Count III

### Defendant Chase fraudulently enticed Plaintiff into applying for multiple mortgage modification programs.

78. All allegations from the foregoing paragraphs above are incorporated here and re-alleged by reference.

79. Defendants knew that Freddie Mac doesn't accept any mortgage modifications from Chase except HAMP modifications, yet still told Plaintiff he would hear about "the other programs we have available for you very soon".

80. Chase then invited and enticed Plaintiff into non HAMP mortgage modification programs including: an "in house modification" and a "bankruptcy modification".

81. Each modification attempt took months, required endless paperwork to be provided such as hardship affidavits, lists of expenses, lists of sources of income, property tax information, insurance policies, pay stubs, bank statements and certain IRS forms such as Form 4506T-EZ.

82. During the applicable period the alleged default continued to grow and Plaintiff was forced to participate in these modification schemes, or lose his home to foreclosure.

83. Defendant prolonged the time frame and increased the amount of the alleged default by either losing information provided by Plaintiff at their request, or allowing that information to become aged and out of date and in need of an update, and then requesting that Plaintiff resubmit it.

84. The repeated modification processes caused Plaintiff to suffer additional and intensified harm as alleged in Complaint 2 Count I 64-66 above, in addition to

Case 1:12-cv-00260-JL Document 40 Filed 03/13/13 Page 15 of 15

Scott LeDoux, *Pro Se* v. J.P. MORGAN CHASE N.A., et al. Civil Case Number 1:12-CV-260-JL

wasting Plaintiff's time, energy and resources on modifications that would never happen.

85. Defendant continues to invite Plaintiff to apply for a mortgage modification, even after Plaintiff filed the instant action. Chase invited Plaintiff to explore a modification on June 28, 2012. See Affidavit/Attachment CHASE PAPERS 2.

## PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court to grant him the following relief:

1. Grant his injunction without bond pursuant to NH RSA 358-A:10 against the defendants and enjoin the foreclosure sale of the property. A proposed order of The Court is attached.

2. After a trial on the merits, enter judgment in favor of Plaintiff and order that the defendants pay Plaintiff's actual, emotional and statutory damages, doubled or tripled pursuant to NH RSA 358-A:10, as well as punitive damages.

3. Other relief, as is just and proper.

Respectfully Submitted,

/s/ Scott LeDoux, *Pro Se*
Scott LeDoux
7 Leel Road
New Ipswich NH 03071
603 562 9920